UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL G. HRIVNAK,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>    Defendant. | Case No. 11-CV-2230-W (JMA)<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DOC. 11] AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT [DOC. 16]** |

Plaintiff Daniel G. Hrivnak ("Plaintiff") seeks judicial review of Defendant Social Security Commissioner Michael J. Astrue's ("Defendant") determination that he is not entitled to a period of disability and disability insurance benefits. The parties have filed cross-motions for summary judgment. For the reasons set forth below, the Court recommends that Plaintiff's motion for summary judgment be **GRANTED**, that Defendant's cross-motion for summary judgment be **DENIED**, and that the case be remanded for further proceedings.

**I. PROCEDURAL HISTORY**

Plaintiff filed an application for a period of disability and disability insurance benefits on November 13, 2008 alleging a disability onset date of August 2, 2006 due to depression and lumbar spine impairment resulting in severe pain. Admin. R. at 14, 49,

121-24. Plaintiff's disability claim was denied initially on March 10, 2009 and again upon reconsideration on April 23, 2009. Id. at 55-59, 61-65. On June 22, 2009, Plaintiff requested an administrative hearing. Id. at 67-68. A hearing was conducted on March 15, 2010 by Administrative Law Judge ("ALJ") Bernard L. Trembly, who determined that Plaintiff was not disabled. Id. at 14-21. Plaintiff requested a review of the ALJ's decision; the Appeals Council for the Social Security Administration ("SSA") denied Plaintiff's request for review on July 28, 2011. Id. at 1-3. Plaintiff then commenced this action pursuant to 42 U.S.C. § 405(g).

## II. FACTUAL BACKGROUND

Plaintiff was born on January 4, 1957. Id. at 49. He obtained a high school diploma and had been incarcerated. Id. at 29, 38. He last worked in July or August 2006 installing fiberglass on Navy ships. Id. at 30, 33. Plaintiff is married with two children, one nineteen years old and one fourteen years old as of the administrative hearing in this case. Id. at 30. Plaintiff's wife works to support the family. Id. at 38.

## III. MEDICAL EVIDENCE

### A. Michael A. Flippin, M.D., Orthopedic Surgeon, Kaiser Permanente (2006-08) (Treating Physician)

Plaintiff first visited Dr. Michael A. Flippin, an orthopedic surgeon, on September 20, 2006 for persistent lower back and right leg pain. Id. at 294. During this visit, Plaintiff told Dr. Flippin that he had a history of occasional low back pain which started after an accident ten years prior. Id. At the time of the accident, Plaintiff was treated with chiropractic treatment, which helped resolve his symptoms. Id. Plaintiff explained that his current back and leg symptoms began and had "steadily worsened over the last few months" leading up to the appointment. Id. Dr. Flippin noted that a lumbar spine MRI dated September 7, 2006 showed degenerative disk disease, most significantly at the L5-S1 level with "grade 2 spondylolisthesis with markedly diminished disk height and bilateral neural foraminal stenosis." Id. at 293. Dr. Flippin also noticed slight degenerative changes in the L4-5 disk space. Id. at 293-94. Plaintiff reported he had

stopped working as a result of his pain and was receiving state disability benefits. Id. He expressed concerns regarding his ability to return to work in a timely manner. Id. at 292. Dr. Flippin recommended that Plaintiff pursue physical therapy and epidural steroid injections before considering surgery. Id.

In December 2006, Plaintiff had a follow-up examination with Dr. Flippin. Id. at 289. Plaintiff reported that his pain remain unchanged despite an epidural steroid injection received the month before. Id. Plaintiff was scheduled for an additional injection, but was skeptical whether the injection would be effective. Id. Dr. Flippin recommended Plaintiff try another epidural steroid injection and that if it, again, only provided temporary relief, then Plaintiff could opt for surgery. Id.

On January 15, 2007, Dr. Flippin completed a Physician's Supplementary Certificate ("PSC") based on his January 10, 2007 appointment with Plaintiff. Id. at 285. Dr. Flippin confirmed Plaintiff's spondylolisthesis and back pain diagnosis. Id. at 284. The PSC also indicated Plaintiff had opted for surgery to treat his condition. Id. at 285. Dr. Flippin estimated Plaintiff would be able to return to his regular work on February 20, 2007. Id. During the preoperative exam on January 29, 2007, Plaintiff complained about worsened low back and right lower extremity pain despite the non-operative treatments, which included physical therapy and epidural steroid injections. Id. at 263. Dr. Flippin recommended and scheduled a L5/S1 transforaminal lumbar interbody fusion with posterior spinal fusion with instrumentation from L5 to S1. Id. at 262.

On February 8, 2007, Dr. Flippin performed the operation with no complications. Id. at 267. Two weeks after the procedure, Plaintiff reported significant soreness and pain in his back, but the radiating pain in his legs had resolved. Id. at 269. Imaging of the incision showed no abnormalities. Id. On March 3, 2007, six weeks after the operation, Plaintiff reported further decrease in his pain and as a result, a reduction in pain medication dosage needed to alleviate his symptoms. Id. at 272. Plaintiff did report occasional tingling in the dorsum of his feet, which began when he was hospitalized, but which he thought had gradually resolved itself. Id. The tingling

sensation had returned and increased, however, because he had decreased his pain medication. Id.  On May 4, 2007, Plaintiff returned to Dr. Flippin for another follow-up examination. Id. at 279.  Plaintiff reported his back and leg pain continued to improve, but the toes on both feet felt occasionally numb. Id.  Plaintiff explained the pain resembled pins pricking his feet intermittently. Id.  There were no other complaints or complications indicated during this visit. Id.  Dr. Flippin referred Plaintiff to physical therapy. Id.  Imaging taken on September 17, 2007 indicated stable spondylolisthesis and stable surgical changes. Id. at 228.

On March 17, 2008, Plaintiff visited Dr. Flippin for a final follow-up examination, in which Plaintiff reported no back or leg pain, but burning, "pinpricks," and numbness in his feet. Id. at 450.  Plaintiff explained the symptoms occurred more frequently in a standing position and could be alleviated with pain medication. Id.  As a result, Plaintiff claimed he did not walk much and had gained weight. Id.  Dr. Flippin considered Plaintiff to be doing well approximately one year after his surgery, but was unsure of the cause of Plaintiff's foot pain. Id. at 451.  He recommended continued gradual increase in physical activity to improve fitness and that Plaintiff continue with physical therapy and refrain from heavy lifting indefinitely. Id.  Plaintiff requested additional pain medication, but Dr. Flippin advised Plaintiff he did not prescribe pain medication beyond six months after surgery and suggested Plaintiff request further prescriptions from his primary care physician. Id.  Plaintiff thus received refills for his pain medication through his primary care physicians at Kaiser. Id. at 452-72.  Plaintiff then visited the Otay Family Health Center for his foot pain on December 15, 2009 and January 14, 2010. Id. at 548, 552.

**B.     Patricia Hrivnak, Wife of Plaintiff, Third Party Function Report (2009)**

On January 26, 2009, Plaintiff's wife completed a third party function report detailing Plaintiff's ability to carry out daily tasks. Id. at 191.  According to the report, Plaintiff ran occasional errands, picked up his children, folded clothes, put meals into the oven, and emptied the dishwasher. Id.  Plaintiff did not have personal care

problems, but could not stand or wear shoes for long periods of time. Id. at 192. Additionally, Plaintiff could vacuum and get the mail, but could not spend a long time cooking in the kitchen because that would require standing. Id. at 193. When Plaintiff did buy groceries, he could only make short trips and buy a few items once a month. Id. at 194. As a result of his pain, Plaintiff no longer went fishing or visited his friends. Id. at 195. Rather, he stayed home to watch television and rarely saw anyone besides immediate family members. Id. His ability to lift, walk, climb stairs, squat, bend, and stand had been affected by his pain. Id. at 196. Plaintiff's wife believed he could not stand for more than ten minutes and had become self-conscious about his weight gain. Id. at 195-96.

**C.     Zaven Bilezikjian, M.D., Orthopedic Surgeon, Medical Support Los Angeles, Inc. (2009) (Examining Physician)**

The Department of Social Services requested an orthopedic consultation for Plaintiff. Id. at 487. On February 13, 2009, Dr. Bilezikjian performed a physical examination of Plaintiff and assessed no problems with his physical ability to carry out normal tasks. Id. at 488, 490. Thus, Dr. Bilezikjian opined that from an orthopedic standpoint, Plaintiff had the ability to push, pull, lift, carry, walk, stand, bend, kneel, stoop, crawl, crouch, walk on uneven terrain, climb ladders, work at heights, and sit without restrictions. Id. at 490. Plaintiff also performed well in the neurologic examination on reflexes and motor capability. Id. Dr. Bilezikjian determined Plaintiff had L5-S1 spondylolisthesis, status post fusion with excellent results, and offered a rule out diagnosis of peripheral neuropathy as a possible cause for Plaintiff's bilateral pain, burning, and tingling in his feet. Id.

**D.     Dan Whitehead, Ph.D., Psychologist (2009) (Examining Physician)**

The Department of Social Services sent Plaintiff to Dr. Whitehead for a psychological consult, which occurred on February 18, 2009. Id. at 493. Plaintiff reported he "used to have some depression, but that was a long time ago." Id. Dr. Whitehead administered the Wechsler Adult Intelligence Scale ("WAIS-III") and other tests and determined Plaintiff was "capable of performing a variety of work activities that

require simple tasks at a constant level of performance," subject to his physical limitations. Id. at 497-98. Dr. Whitehead noted Plaintiff did not have major restrictions in his daily activities or social functioning. Id. at 498. Consequently, Dr. Whitehead gave Plaintiff a good prognosis. Id.

**E.   D. Rose, M.D., Physician, and K. Loomis, D.O., Psychologist (2009) (Non-Examining Physicians)**

In April 2009, non-examining physicians D. Rose, M.D. and K. Loomis, D.O. opined on Plaintiff's residual capacity assessment. Id. at 524-25. Dr. Loomis noted that psychiatrically, Plaintiff did not have a medically determinable impairment and affirmed the prior psychological diagnosis on record. Id. at 524. Dr. Rose determined Plaintiff had the residual functional capacity to perform light work, meaning he could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds, stand or walk about six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. Id. at 526. In addition, Dr. Rose believed Plaintiff could occasionally climb ladders or stairs, balance, stoop, kneel, crouch, and crawl. Id. at 527. He found no manipulative, visual, or environmental limitations. Id. at 527-28. In conclusion, Dr. Rose considered Plaintiff's alleged symptoms to be "less than fully credible as to severity," but opined that the opinion of Dr. Bilezikjian, the orthopedic consultative examiner, "does not adequately accommodate the history of lumbar fusion, no matter how successful." Id. at 528-29.

**F.   Alanson A. Mason, M.D., Orthopedic Surgeon (2010) (Examining Physician)**

Dr. Mason examined Plaintiff on February 9, 2010 to evaluate his physical condition and corresponding ability to obtain gainful employment. Id. at 554. After reviewing Plaintiff's medical records and administering a physical examination, Dr. Mason diagnosed Plaintiff with third-degree spondylolisthesis at L5-S1, chronic lower back pain and right L5 radiculopathy, degenerative disc disease at L4-L5 with right L5 radiculopathy, post-surgical urinary incontinence, bowel incontinence, and erectile dysfunction, morbid obesity, sagittal plane imbalance, uncontrolled severe hypertension,

and chronic smoking dependence. Id. at 560. Consequently, Dr. Mason's prognosis indicated Plaintiff's post-surgery recovery had plateaued, and his condition would be unlikely to improve with time. Id. at 561. Dr. Mason further noted that Plaintiff's sagittal imbalance required increased efforts on Plaintiff's muscles to maintain an erect posture, and this would lead to fatigue and pain. Id. at 560-61. Dr. Mason opined that Plaintiff's morbid obesity increased the stress on his spinal muscles, and thus Plaintiff was approaching the "maximum limits of balance." Id. at 561. He stated weight loss may relieve the "load upon the sagittal imbalance of the thoracolumbar spine." Id. He concluded Plaintiff was severely limited in performing physical activities that require "standing, walking, climbing, stooping, squatting, kneeling, lifting, pushing and pulling." Id.

On February 15, 2010, Dr. Mason completed a lumbar spine impairment questionnaire in which he indicated Plaintiff had limited range of motion, tenderness, and muscle spasms in his back coupled with sensory loss, reflex changes, and bilateral feet numbness and tingling. Id. at 563-64. As a result, Dr. Mason indicated Plaintiff's physical limitations would prevent him from lifting more than twenty pounds, carrying more than ten pounds, sitting more than six hours, and standing or walking more than two hours a day. Id. at 565-66. Dr. Mason determined Plaintiff could not sit, stand, or walk continuously in a work setting, and that Plaintiff must get up and move around every two hours for ten minutes. Id. at 566.

**G.    Michele Lamantia, M.D., Internist, San Ysidro Health Center (2010) (Treating Physician)**

Dr. Lamantia submitted a report dated May 10, 2010 indicating Plaintiff was under pain management for chronic plantar fasciitis following his surgery. Id. at 571.[1] As a result of his medical history, current obesity, and inability to afford more than basic conservative management of his bilateral feet pain, including night splinting and passive

---

[1] The report was prepared after the ALJ's decision, and thus was not considered by the ALJ, but it was considered by the Appeals Council. Admin. R. at 4.

stretching, Dr. Lamantia determined Plaintiff could not sustain gainful employment and was unable to return to his former employment. Id. Dr. Lamantia also indicated Plaintiff's condition would require many years to correct, and that he had been referred for a neurologic evaluation to rule out peripheral neuropathy. Id.

## IV. THE ADMINISTRATIVE HEARING

The ALJ conducted an administrative hearing on March 15, 2010. Id. at 27.

### A. Plaintiff's Testimony

Plaintiff testified he lives at home with his wife and children. Id. at 30. Plaintiff experienced a sharp pain from his right buttocks area going down his leg in July or August of 2006. Id. As a result, Plaintiff could not stand because the back pain became severe. Id. Plaintiff testified he went to Kaiser for different treatments, including epidural injections, in attempts to avoid surgery. Id. However, Plaintiff had to have back surgery, a fusion at L5/S1, on February 8, 2007. Id. at 31, 33. Despite the surgery, Plaintiff still experienced pressure in the back after standing more than three or four minutes. Id. at 31. His main complaint, however, was severe pain in his feet. Id. Plaintiff takes medication, including Percocet and Norco, every few hours to control his pain. Id. Although Plaintiff had been taking medication for over three years, he testified he did not experience withdrawal or side effects when he once ran out of his medication. Id. at 32. However, Plaintiff testified he is in agony due to his bilateral foot pain without the medication. Id.

Plaintiff testified his last job, which he left in 2006, was in fiberglass installation on Navy ships. Id. at 33. Plaintiff experienced a sudden onset of pain shooting down his leg over a period of a week to ten days which became more severe until he could no longer stand. Id. at 35. Then, three months after his back surgery, Plaintiff felt tingling in his feet. Id. at 36. Attributing the pain to residual effects of the surgery, Plaintiff took medication for a month. Id. However, the pain did not improve, but worsened to the point where his feet were bothering him more than anything. Id. at 36-37. Plaintiff testified he believed he would have to live with the pain for the rest of his life, would

have to go on heavier pain medication, and could not work because he felt drowsy from the effects of his medication. Id. at 37.

Plaintiff testified he could drive and walk around the block, but could not go back to his former job because he could not stand all day. Id. at 35. In addition, Plaintiff cannot wear shoes all day because shoes and socks intensify the pain. Id. at 35-36. Plaintiff testified he must take off his shoes after two hours. Id. at 42. Because he is less active, Plaintiff has gained weight. Id. at 43. Presently, Plaintiff only experiences slight pressure in his lower back after standing more than three or four minutes. Id. at 44.

Plaintiff lost his insurance in October 2008. Id. Plaintiff was diagnosed with diabetes after he developed the pain in his feet. Id. at 45. Plaintiff feels depressed as a result of his current inability to work. Id.

**B.   Vocational Expert Testimony**

Vocational expert ("VE") witness John Kilcher testified at the administrative hearing. Id. at 45. The VE characterized Plaintiff's past work as an assembler in ship installation, classified as medium work and semi-skilled. Id.   Plaintiff also previously worked as a machine operator/packer, classified as light and unskilled. Id. at 46. The VE testified that in either job, Plaintiff would have to stand for a minimum of six hours. Id.

**V.   THE ALJ DECISION**

After considering the record, ALJ Trembly made the following findings:

. . . .

2.   The claimant has not engaged in substantial gainful activity since August 2, 2006, the alleged onset date [citation omitted].

3.   The claimant has the following severe impairments: degenerative disc disease, status post instrumented fusion at the L5-S1 [citation omitted].

4.   The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in [the Social Security regulations].

. . . .

5.   After careful consideration of the entire record, the undersigned finds that

>   the claimant has the residual functional capacity to perform the full range of light work. The claimant could lift and carry twenty pounds occasionally and ten pounds frequently, stand and walk six hours of an eight-hour workday and sit six hours of an eight-hour workday as defined in 20 C.F.R 404.1567(b).
>
>   6.  The claimant is unable to perform any past relevant work [citation omitted].
>
>   . . . .
>
>   10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform [citations omitted].
>
>   . . . .
>
>   11. The claimant has not been under a disability, as defined in the Social Security Act, from August 2, 2006, through the date of this decision [citation omitted].

(Id. at 16-21.)

## VI. STANDARD OF REVIEW

To qualify for disability benefits under the Social Security Act, an applicant must show that: (1) He or she suffers from a medically determinable impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of twelve months or more, and (2) the impairment renders the applicant incapable of performing the work that he or she previously performed or any other substantially gainful employment that exists in the national economy. See 42 U.S.C. § 423(d)(1)(A), (2)(A). An applicant must meet both requirements to be "disabled." Id. Further, the applicant bears the burden of proving that he or she was either permanently disabled or subject to a condition which became so severe as to disable the applicant prior to the date upon which his or her disability insured status expired. Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995).

### A.   Sequential Evaluation of Impairments

The Social Security Regulations outline a five-step process to determine whether an applicant is "disabled." The five steps are as follows: (1) Whether the claimant is presently working in any substantial gainful activity. If so, the claimant is not disabled. If not, the evaluation proceeds to step two. (2) Whether the claimant's impairment is

severe. If not, the claimant is not disabled. If so, the evaluation proceeds to step three. (3) Whether the impairment meets or equals a specific impairment listed in the Listing of Impairments. If so, the claimant is disabled. If not, the evaluation proceeds to step four. (4) Whether the claimant is able to do any work he has done in the past. If so, the claimant is not disabled. If not, the evaluation continues to step five. (5) Whether the claimant is able to do any other work. If not, the claimant is disabled. Conversely, if the Commissioner can establish there are a significant number of jobs in the national economy that the claimant can do, the claimant is not disabled. 20 C.F.R. § 404.1520; see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

**B.    Judicial Review**

Sections 205(g) and 1631(c)(3) of the Social Security Act allow unsuccessful applicants to seek judicial review of the Commissioner's final agency decision. 42 U.S.C.A. §§ 405(g), 1383(c)(3). The scope of judicial review is limited. The Commissioner's final decision should not be disturbed unless: (1) The ALJ's findings are based on legal error or (2) are not supported by substantial evidence in the record as a whole. Schneider v. Comm'r of Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court must consider the record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusion. See Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009) (citing Andrews, 53 F.3d at 1039). Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed. Vasquez, 572 F.3d at 591 (citation and quotations omitted).

Section 405(g) permits this Court to enter a judgment affirming, modifying, or

reversing the Commissioner's decision. 42 U.S.C.A. § 405(g). The matter may also be remanded to the SSA for further proceedings. Id.

## VII. DISCUSSION

Plaintiff contends that the ALJ's decision to deny Plaintiff disability status was legally improper and was not supported by substantial evidence. Plaintiff makes the following arguments: First, the ALJ erred by disregarding the diagnoses by every treating and consulting physician regarding Plaintiff's foot pain, particularly Dr. Mason's opinion, without providing specific reasons or rationale. Pl.'s Mem. at 9-12. Second, the ALJ's finding that Plaintiff's subjective complaints of disabling pain were not credible lacked supporting substantial evidence. Id. at 12-15.

### A.     The ALJ's Consideration of Plaintiff's Doctors' Opinions

Plaintiff contends the ALJ should have found Plaintiff's bilateral foot pain and paresthesias to be a severe impairment at step two, and erred by ignoring Plaintiff's doctors' diagnoses relating to this condition. Pl.'s Mem. at 10-11. Plaintiff further argues the ALJ failed to properly consider the opinions of Plaintiff's physicians, particularly Dr. Mason's opinion, in determining Plaintiff's residual functional capacity ("RFC"). Id. at 11-12.

A "severe" impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The ALJ is to consider all evidence relevant to the claim, including medical opinions, to make a finding at any step of the sequential evaluation process. Id., §§ 404.1520(a)(3), 404.1520b. Here, Plaintiff contends the ALJ ignored the opinions of Drs. Flippin, Bilezikjian, Mason, and Lamantia concerning Plaintiff's foot complaints. Pl.'s Mem. at 10-11.

Dr. Flippin did acknowledge Plaintiff's complaints of foot pain and numbness, as Plaintiff observes, but did not offer any diagnosis of this condition and stated only that it was of unknown etiology. Id. at 451. Dr. Bilezikjian made a "rule out" diagnosis of peripheral neuropathy, but by definition a rule out diagnosis is not a definitive

diagnosis.² Thus, neither Dr. Flippin nor Dr. Bilezikjian rendered an opinion sufficient to substantiate Plaintiff's complaints regarding his foot pain, and thus it cannot be said that the ALJ erred by ignoring these opinions with respect to Plaintiff's bilateral foot complaints.

Dr. Mason, referencing Plaintiff's foot complaints, opined that Plaintiff had right L5 radiculopathy and bilateral S1 radiculopathy. Id. at 560, 563.³ While Dr. Mason discussed Plaintiff's sagittal plane imbalance in greater detail than his bilateral foot complaints (see Admin. R. at 560-61, 569), Dr. Mason did render a diagnosis concerning the foot complaints and also indicated that Plaintiff's foot numbness and tingling were one of Plaintiff's primary symptoms and causes of pain (see id. at 564-65). As Dr. Mason's opinion was contradicted by other medical opinions in the record, in order to reject Dr. Mason's opinion, the ALJ was required to articulate "specific and legitimate" reasons for doing so based on substantial evidence in the record. Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). As Plaintiff observes, the ALJ made only brief mention of Dr. Mason in his decision (see Admin. R. at 18, 19), and the ALJ's only definitive assessment of Dr. Mason's opinion came during the ALJ's analysis of Plaintiff's credibility, when the ALJ stated: "[B]oth Drs. Bilezikjian and Mason said the claimant was not limited in performing activities of daily living. The medical records of evidence did not say the claimant had problems ambulating without assistance due to having back pain and foot pain needing rest throughout the day." Id. at 19-20. The ALJ did not explicitly "reject" Dr. Mason's opinion or findings. The brief mention the ALJ did make -- that Dr. Mason purportedly found that Plaintiff was not limited in performing activities of daily living -- is not supported by the record, as the Court views Dr. Mason's report as indicating that Plaintiff *was* limited in his ability to perform basic tasks. Id. at

---

²A "rule out" diagnosis is used to "eliminate [] a serious diagnostic consideration." http://medical-dictionary.thefreedictionary.com/rule-out (as visited Sept. 4, 2012).

³Radiculopathy occurs when "low back problems . . .affect[ing] a lumbar nerve root . . . radiate through the leg and into the foot . . ., thus prompting leg pain and/or foot pain." http://www.spine-health.com/conditions/spine-anatomy/radiculopathy-radiculitis-and-radicular-pain (as visited Sept. 4, 2012)

561, 565-68 (providing, *inter alia*, that Plaintiff is severely limited in the performance of activities requiring standing, walking, etc., and that prolonged standing, walking, climbing, and sitting would lead to pain).  The ALJ thus did not articulate a "specific and legitimate" reason to reject Dr. Mason's opinion, constituting legal error.  See Lester, 81 F.3d at 830-31.  "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded."  Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981).  The Court accordingly recommends that the ALJ, upon remand, be required to provide further consideration of Dr. Mason's opinion and findings, including Dr. Mason's opinion regarding Plaintiff's RFC.[4]

As for Dr. Lamantia's opinion that Plaintiff suffered from plantar fasciitis and that he was unable to sustain gainful employment, this opinion was not rendered until *after* the ALJ issued his decision.  Admin. R. at 571.  Therefore, although the Appeals Council did consider her opinion (id. at 4), the ALJ did not (a point not recognized by either party).  The Court may properly consider any additional materials submitted to the Appeals Council in conjunction with a claimant's request for review.  Harman v. Apfel, 211 F.3d 1172, 1179-80 (9th Cir. 2000).  It is not appropriate for the Court to conclude Plaintiff is entitled to benefits as a matter of law based on Dr. Lamantia's report, however, for two reasons.  First, Dr. Lamantia's opinion that Plaintiff is unable to work is a medical rather than a legal conclusion, and there is no testimony from a VE that the limitations found by Dr. Lamantia would render Plaintiff unable to perform work.  See, e.g., id. at 1180; 20 C.F.R. § 404.1527(d) (opinion on whether a claimant is disabled is reserved to the Commissioner).  Second, the ALJ has not yet had an opportunity to consider Dr. Lamantia's opinion.  See Harman, 211 F.3d at 1180 ("While we properly may consider the additional evidence presented to the Appeals Council in determining whether the Commissioner's denial of benefits is supported by substantial evidence, it is

---

[4]The ALJ did not, as Plaintiff states, "opt[] for some self-created middle road" between the opinions of Drs. Mason and Bilezikjian as to Plaintiff's residual functional capacity.  See Pl.'s Mem. at 10.  Rather, as Defendant observes (see Def.'s Opp'n at 7), the ALJ followed the opinion of Dr. Rose, the non-examining state agency physician.  Compare Admin. R. at 17 (ALJ's formulation of Plaintiff's RFC), with id. at 526 (Dr. Rose's formulation of Plaintiff's RFC).

another matter to hold on the basis of evidence that the ALJ has had no opportunity to evaluate that Appellant is entitled to benefits as a matter of law.") Like the court in Harman, the Court finds the appropriate remedy in this situation is to remand this matter to the ALJ for consideration of this additional evidence. See id.

**B.     The ALJ's Determination of Plaintiff's Credibility**

Plaintiff also argues the ALJ's finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible is not supported by substantial evidence. Pl.'s Mem. at 12-15; Admin. R. at 19. In determining a claimant's residual functional capacity, the ALJ must consider all relevant evidence in the record, including medical records, lay evidence, and "the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." See Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) (citing SSR 96-8p, 1996 WL 374184, at *5). "Careful consideration must be given to any available information about symptoms because subjective descriptions may indicate more severe limitations or restrictions than can be shown by objective medical evidence alone." SSR 96-8p, 1996 WL 374184, at *5. When considering a claimant's subjective symptom testimony, "if the record establishes the existence of a medically determinable impairment that could reasonably give rise to the reported symptoms, an ALJ must make a finding as to the credibility of the claimant's statements about the symptoms and their functional effect." Robbins, 466 F.3d at 883 (9th Cir. 2006) (citations omitted). "While an ALJ may find testimony not credible in part or in whole, he or she may not disregard it solely because it is not substantiated affirmatively by objective evidence." Id. Rather, an ALJ may only find a claimant not credible by making specific findings as to credibility and stating clear and convincing reasons to discount the claimant's subjective symptom testimony. Id.; see also Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir.2007).

Here, the ALJ stated the following regarding Plaintiff's credibility:

> First, the claimant's allegations of significant limitations are not borne out
> in his description of his daily activities. The claimant reported that his

> activities of daily living include: picking up his son from school, prepares light meal, watch television and read during the day (Exhibit 3E). <u>Second</u>, there is no evidence of any severe weight loss because of loss of appetite due to having lower back pain and leg pain. The claimant has been noted to be well nourished and appears well. <u>Third</u>, Dr. Bilezikjian diagnosed the claimant with L5-S1 spondylolisthesis, status post fusion with excellent results. Dr. Bilezikjian said the claimant could push, pull, lift and carry, stand and walk without any restrictions. The claimant would not need assistive devices to ambulate. The claimant can perform bending, kneeling stooping, crawling and crouching without restrictions. The claimant can also walk on uneven terrain, climbing ladders, or working at heights can also be done without restrictions (Exhibit 4F/4, 5). <u>Fourth</u>, both Drs. Bilezikjian and Mason said the claimant was not limited in performing activities of daily living. The medical records of evidence did not say the claimant had problems ambulating without assistance due to having back pain and foot pain needing rest throughout the day. <u>Fifth</u>, in addition, from a mental standpoint, Dr. Whitehead diagnosed the claimant with no objective signs of significant cognitive or psychological impairment. Dr. Whitehead gave the claimant a global assessment of functioning score of 70-80 which are mild symptoms (Exhibit 13F). <u>Seventh</u> [sic], Dr. Bilezikjian and the DDS physician [Dr. Rose] both opined that the claimant could perform light level work.

(Admin. R. at 19-20.) The Court must determine whether the ALJ provided clear and convincing reasons for this adverse credibility finding.

The ALJ's first proffered reason for finding Plaintiff's pain testimony not credible, that Plaintiff was able to pick up his son from school, prepare light meals, watch television, and read, is not a clear and convincing reason. "One does not need to be 'utterly incapacitated' in order to be disabled." <u>Vertigan v. Halter</u>, 260 F.3d 1044, 1050 (9th Cir. 2001) (citing <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir. 1989)). With respect to daily activities, "[i]f a claimant is able to spend a *substantial part* of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations." <u>Morgan v. Comm'r of the Soc. Sec. Admin.</u>, 169 F.3d 595, 599 (9th Cir. 1999) (emphasis added). Clearly, Plaintiff did not spend a substantial part of the day picking up his son from school and preparing light meals, and these activities, plus watching television and reading, are not necessarily transferable to a work setting. The Court does not find that such activities detract from Plaintiff's symptom allegations.

The Court cannot fathom how the ALJ's second proffered reason for finding

Plaintiff not credible, that he did not have any severe weight loss due to a loss of appetite, has any bearing on credibility, and Defendant has provided no explanation as to why this constitutes a clear and convincing reason to reject Plaintiff's subjective symptom testimony. Presumably, the ALJ is of the opinion that a person in pain will necessarily have a loss of appetite due to that pain. The Court thinks this is hardly the case.

The ALJ's third proffered reason for finding Plaintiff's symptom testimony not credible, that Dr. Bilezikjian found Plaintiff to have no physical limitations or restrictions, is not supported by substantial evidence in the record. The state agency physician, Dr. Rose, whose opinion the ALJ relied on in formulating Plaintiff's RFC, questioned Dr. Bilezikjian's opinion as it "does not adequately accommodate the history of lumbar fusion, no matter how successful." Admin. R. at 528-29. Moreover, Dr. Bilezikjian's opinion that Plaintiff had no physical limitations or restrictions was from an *orthopedic* standpoint only, and did not factor in Plaintiff's complaints of bilateral foot pain. Id. at 490.

The fourth reason proffered by the ALJ to discount Plaintiff's credibility, that Drs. Bilezikjian and Mason found Plaintiff was not limited in performing activities of daily living, and did not say Plaintiff had problems ambulating without assistance due to having back pain and foot pain needing rest throughout the day, is unsupported by the record. Again, as discussed above, Dr. Bilezikjian's opinion regarding Plaintiff's abilities was called into question by Dr. Rose, and the ability to perform activities of daily living does not necessarily refute allegations of pain. See, e.g., Morgan, 169 F.3d at 599. Furthermore, Dr. Mason *did* say Plaintiff had severe physical limitations and would need to rest at unpredictable intervals once or twice per day due to his pain, as well as get up and move around after every two hours of sitting. Admin. R. 561, 566, 568.

That Dr. Whitehead, the examining psychologist, diagnosed Plaintiff with no objective signs of significant cognitive or psychological impairment actually bolsters, rather than detracts from, Plaintiff's credibility, as this opinion was rendered at a time

when Plaintiff admitted that he had no cognitive concerns and was no longer depressed. Id. at 493.  Thus, the ALJ's fifth proffered reason for finding Plaintiff not credible is not clear and convincing.

The sixth reason articulated by the ALJ for finding Plaintiff not credible was that Drs. Bilezikjian and Rose found Plaintiff could perform light level work.  Dr. Bilezikjian, however, as discussed above, did not opine that Plaintiff could perform light work. Rather, he rendered the questionable opinion that Plaintiff had *no* limitations on his physical ability to work.  The reason articulated by Dr. Rose for finding Plaintiff could perform light level work was based upon the doctor's opinion that Plaintiff's allegations were "less than fully credible as to severity."  Id. at 528.  However, the ALJ has to make his *own* credibility findings if he wishes to discount a claimant's credibility.

In sum, the reasons articulated by the ALJ do not constitute clear and convincing reasons for rejecting Plaintiff's subjective pain and symptom testimony.  The Court accordingly recommends that the ALJ reconsider Plaintiff's credibility upon remand.  If he wishes to reject Plaintiff's testimony regarding the limitations imposed by his physical impairments, he must point to "specific facts in the record" for doing so, or else accept Plaintiff's testimony.  See, e.g., Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).

**VIII. CONCLUSION**

For the reasons set forth above, Plaintiff's motion for summary judgment should be **GRANTED**, Defendant's cross-motion for summary judgment should be **DENIED**, and the case should be remanded for further proceedings.

This report and recommendation will be submitted to the Honorable Thomas J. Whelan, United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Any party may file written objections with the Court and serve a copy on all parties on or before **October 2, 2012**.  The document should be captioned "Objections to Report and Recommendation."  Any reply to the Objections shall be served and filed on or before **October 16, 2012**.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district court's

order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED:  September 11, 2012

                                Jan M. Adler
                                U.S. Magistrate Judge